# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2003-CA-00320-SCT

*EVELYN FAIRLEY*

*v.*

*GEORGE COUNTY, MISSISSIPPI, A POLITICAL SUBDIVISION*

| | |
|---|---|
| DATE OF JUDGMENT: | 2/10/2003 |
| TRIAL JUDGE: | HON. KATHY KING JACKSON |
| COURT FROM WHICH APPEALED: | GEORGE COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | BEN F. GALLOWAY |
| ATTORNEYS FOR APPELLEE: | DAVID MICHAEL ISHEE |
| | WILLIAM M. RAINEY |
| NATURE OF THE CASE: | CIVIL - PERSONAL INJURY |
| DISPOSITION: | AFFIRMED - 04/22/2004 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**SMITH, CHIEF JUSTICE, FOR THE COURT:**

¶1.     This Mississippi Tort Claims Act action for personal injuries arises from the Circuit Court of George County.  On May 30, 1996, Evelyn Fairley allegedly sustained injuries when she lost control of her vehicle due to gravel on county-maintained River Road in George County, Mississippi.  Fairley's attorney sent a letter to the George County Board of Supervisors (the Board) on June 19, 1996.  The letter referenced a single-vehicle accident on River Road in George County on May 30, 1996, due to gravel on the road. Moreover, it stated that Fairley sustained personal injuries and/or property damage and asked the Board to forward the letter to its liability insurance carrier.  After Fairley filed this suit against George County,

process was issued to R. Wayne Christian (Christian), President of the Board, and to each individual supervisor. Fairley's attorney subsequently filed an amended complaint to which the Board answered, raising immunity and alleging a lack of statutory notice of the claim.

¶2.     The Board moved for summary judgment, asserting that Fairley did not strictly comply with Miss. Code Ann. § 11-46-11. The trial court granted the Board's motion for summary judgment.[1] Fairley requested reconsideration of the trial court's decision which was denied. Fairley appealed the summary judgment to this Court.

¶3.     This Court reversed the decision of the trial court granting summary judgment. *Fairley v. George County*, 800 So.2d 1159 (Miss. 2001) (*Fairley I*). We remanded this matter back to the trial court for a determination of whether Fairley substantially complied with the Mississippi Tort Claims Act (MTCA) notice provisions, Miss. Code Ann. § 11-46-11. The trial court had applied a strict compliance standard, rather than that of substantial compliance, as to the letter sent by Fairley's attorney. *Id*.

¶4.     On remand, the Board filed another motion for summary judgment alleging:

(1)     First, Fairley did not file a notice of claim that substantially complies with Miss. Code Ann. § 11-46-11;

(2)     Second, that the Board was statutorily immune from liability for all acts relating to the maintenance and upkeep of its roads.

¶5.     The trial court entered an order granting the Board's motion for summary finding that:

the notice did not substantially comply with the requirements of § 11-46-11 of the Mississippi Code. Additionally, the Court finds that maintenance of roads is a discretionary function for which sovereign immunity has not been waived for the county. *See Coplin v. Francis*, 631 So.2d 752 (Miss. 1994); *Webb v. City of Lincoln*, 536

---

[1] At the time the trial court considered *Fairley I*, strict compliance with the notice provisions of the MTCA was necessary to provide adequate notice. On December 31, 1998, this Court changed the notice standard to substantial compliance with the MTCA in *Reaves ex rel. Rouse v. Randall*, 729 So.2d 1237 (Miss. 1998).

2

So.2d 1356 (1988). As such, the Court finds that there remain no genuine issues of material fact so that George County is entitled to a judgment as a matter of law.

¶6. Fairley raises the following issues on appeal:

 **I. WHETHER THE TRIAL COURT ERRED IN FINDING THAT FAIRLEY FAILED TO SUBSTANTIALLY COMPLY WITH THE NOTICE PROVISIONS OF MISS. CODE ANN. § 11-46-11.**

 **II. WHETHER THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT FINDING THAT THE MAINTENANCE OF ROADS BY A COUNTY IS A DISCRETIONARY FUNCTION FOR WHICH SOVEREIGN IMMUNITY APPLIED.**

## STANDARD OF REVIEW

¶7. There are two standards of review we must apply in resolving this dispute. First, "[t]his Court reviews errors of law, which include the proper application of the Mississippi Tort Claims Act, de novo." *Fairley I*, 800 So.2d at 1162. Moreover, we review summary judgments de novo. ***Grange Mut. Cas. Co. v. U.S. Fidelity & Guar. Co.***, 853 So.2d 1187, 1190 (Miss. 2003). The facts are viewed the light most favorable to the nonmovant. If a genuine issue of material fact exists, summary judgment is inappropriate. A nonmovant must show by specific facts that there exists a genuine issue of material fact; that is, the nonmoving party may not rest on allegations or denials in the pleadings to withstand the motion. ***Id.***

## DISCUSSION

 **I. WHETHER THE TRIAL COURT ERRED IN FINDING THAT FAIRLEY FAILED TO SUBSTANTIALLY COMPLY WITH THE NOTICE PROVISIONS OF MISS. CODE ANN. § 11-46-11.**

¶8. The MTCA notice statute provides:

Every notice of claim required by subsection (1) of this section shall be in writing, and shall be delivered in person or by registered or certified United States mail. Every notice of claim shall contain a short and plain statement of the facts upon which the claim is based, including the circumstances which brought about the injury, the extent of the injury, the time

3

and place the injury occurred, the names of all persons known to be involved, the amount of money damages sought and the residence of the person making the claim at the time of the injury and at the time of filing the notice.

Miss. Code. Ann. § 11-46-11 (Rev. 2002). This Court requires "substantial compliance" with the MTCA notice provisions. *See **Carr v. Town of Shubuta***, 733 So.2d 261 (Miss. 1999); ***Reaves ex rel. Rouse v. Randall***, 729 So. 2d 1237 (Miss. 1998). However, while plaintiffs need only substantially comply with the MTCA notice statute, "we can hardly afford relief under the [MTCA] when there is **no effort** to comply with the procedural mandates." ***Little v. Miss. Dep't of Human Servs.***, 835 So. 2d 9, 12-13 (Miss. 2002) (emphasis added). That is, "[t]hough substantial compliance with the notice provisions is sufficient, 'substantial compliance is not the same as, nor a substitute for, non-compliance.'" ***Gale v. Thomas,*** 759 So. 2d 1150, 1158 (Miss. 1999) (plurality) (quoting ***Carr v. Town of Shubuta***, 733 So. 2d 261, 265 (Miss. 1999)).

¶9.     Although substantial compliance is a legal question, factual analysis of our cases shows that Fairley's letter to the County fails to meet even the substantial compliance standard. That is, "[t]he determination of substantial compliance is a legal, though fact-sensitive, question." ***Carr***, 733 So.2d at 265. In terms of compliance with the notice provisions of the MTCA, the present case falls in the range between ***Gale*** and ***Carr***.

¶10.    In ***Gale***, the plaintiff did not assert that the MTCA notice provisions were satisfied. 759 So. 2d at 1158. Moreover, the plaintiff did not even argue substantial compliance. Rather, she simply argued that the notice provisions were inapplicable to her. ***Id.*** This Court affirmed the summary judgment in favor of the defendant city. ***Id.*** at 1160. Likewise, the plaintiff in ***Little*** failed to meet our substantial compliance requirement. The plaintiff in ***Little*** served the Attorney General with process, and there was no evidence

4

that the plaintiff attempted to serve anyone at the agency or the agency's chief executive officer. ***Little***, 835 So. 2d at 12. Moreover, the plaintiff did not meet the statute of limitations requirement. Furthermore, the plaintiff did not file a notice of claim to toll the limitations period. Thus, we concluded that the plaintiff had "not done anything which is required under the Mississippi Tort Claims Act to sue a governmental entity." ***Id.*** However, the plaintiff in ***Carr*** substantially complied with the MTCA notice of claim provisions. 733 So.2d at 265. The Court in ***Carr*** held:

> Carr provided Shubuta with all of the required information except a liquidated amount of damages, although she stated the extent of her injuries in adequate detail. She was given the form by a city employee and assisted in completing the form. Furthermore, once her damages were ascertainable, the adjuster was made aware of same and actively pursued settlement with Carr and her attorney. It is not difficult to find in this case that Ms. Carr substantially complied with the notice of claim provisions of the act.

***Id.***

¶11.     These cases exemplify the marked contrast in compliance that we have previously considered. On one hand, we have the plaintiffs in ***Gale*** and ***Little*** who clearly did not meet our substantial compliance requirement. At the other end of the spectrum is ***Carr***, in which the plaintiff substantially complied with the statute's simple standards by providing sufficient information about herself and the cause of her injuries.

¶12.     Here, however, we are unwilling to overlook the clear mandates of the Legislature and our precedents.   It is neither possible nor prudent to reduce the determination of substantial compliance to a rigid mathematical test.  However, we note that George County argues convincingly that under Fairley's view of substantial compliance, a plaintiff who complies with only about 25% of the MTCA notice requirement achieves "substantial compliance" for purposes of the statute and our case law.  The County

argues that Fairley's letter was in writing and gave the time and place of the injury. The letter was not sent

to the County, but rather to an attorney. The County also points out the following defects in the letter:

> This letter was not (1) sent registered mail or certified mail, nor was it delivered in person; (2) did not contain a short and plain statement of the facts with regard to circumstance of injury; (3) did not give the extent of injuries; (4) did not give the name of all persons; (5) did not list the damages sought; and (6) did not give the residence of the claimant.

¶13. The separate opinion argues that the facts in *Reaves* and those present here are similar or even

identical. This is simply not the case. Here, we have a bare attempt at "minimal compliance," certainly not

"substantial compliance" as required by statute and as contemplated by our precedent case law. Fairley

made no attempt to comply with at least six statutorily required factors. We recognize "regarding extent

of injuries" requirements that on occasion the full extent of such injuries may only become known at a later

date. However, a plaintiff is required to reveal the extent of injuries known at the time the notice letter is

sent. We hold, as in *Gale* and *Little*, that Fairley did not substantially comply with the statute. Our role

is one of interpreting the law as passed by the Legislature. Accordingly, this Court will interpret the statute

as written, ever mindful that the Legislature has the ultimate authority to further modify the statutes if it

deems necessary.

¶14. We find that the trial court did not err in finding that Fairley failed to substantially comply with the

MTCA notice provisions. Therefore, this issue is without merit.

> **II. WHETHER THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT FINDING THAT THE MAINTENANCE OF ROADS BY A COUNTY IS A DISCRETIONARY FUNCTION FOR WHICH SOVEREIGN IMMUNITY APPLIED.**

¶15. Because we find that Fairley did not substantially comply with the MTCA notice provisions and

summary judgment was appropriate, we need not consider this assignment of error.

**CONCLUSION**

¶16.    For the foregoing reasons, we find that Fairley's assignments of error are without merit.  Therefore, the judgment of the trial court is affirmed.

¶17.    **AFFIRMED.**

**WALLER AND COBB, P.JJ., CARLSON AND DICKINSON, JJ., CONCUR. EASLEY, J., CONCURS IN RESULT ONLY WITH SEPARATE WRITTEN OPINION JOINED BY GRAVES, J.  DIAZ, J., NOT PARTICIPATING.**

**EASLEY, JUSTICE, CONCURRING IN RESULT:**

¶18.    I respectfully disagree with the majority's view that Fairley's letter did not substantially comply with the notice provision of Miss. Code Ann. § 11-46-11(2). Furthermore, the letter in *Reaves ex rel. Rouse v. Randall*, 729 So.2d 1237 (Miss. 1998), submitted to meet the notice provision of the MTCA as prescribed by Miss. Code Ann. § 11-46-11 is virtually identical to the letter provided by Fairley's attorney to the Board in the case sub judice.  In *Reaves*, we found that the letter substantially complied.  Based on the similarity of the facts of *Reaves* to the case at bar, I must disagree with the majority's conclusion. *Reaves*, 729 So.2d at 1238.  I believe that the majority is losing sight of prior case law which no longer requires strict compliance and the fact that these are simple requirements to place the appropriate parties on notice of a claim.

¶19.    Miss. Code Ann. § 11-46-11(2) states:

(2)    Every notice of claim required by subsection (1) of this section shall be in writing, and shall be delivered in person or by registered or certified United States mail. Every notice of claim shall contain a short and plain statement of the facts upon which the claim is based, including the circumstances which brought about the injury, the extent of the injury, the time and place the injury occurred, the names of all persons known to be involved, the amount of money damages sought and the residence of the person making the claim at the time of the injury and at the time of filing the notice.

**I. The Letters**

7

¶20.    The majority opinion fails to recognize that the facts here and in ***Reaves*** are almost identical.  In

a side by side comparison, Fairley's attorney Gia Nicole Eubanks, sent the following letter dated June 19,

1996, addressed to the Board:

> RE:    My Client:    Evelyn Fairley
> Date of Acc:    05/30/96
> Nature:    Single motor vehicle accident on River Road in George County,
> Mississippi - gravel in the road

> Please be advised that this firm represents Ms. Fairley with regard to personal injuries
> and/or property damaged she sustained **in the above referenced accident** on May
> 30, 1996.[2]

> Please forward this letter to your liability insurance company so that the adjuster handling
> this matter may be in contact with me as soon as possible.  In the event that you do not
> have liability insurance to cover this accident, contact me immediately to discuss your
> intentions in this matter.

> I look forward to hearing from you in the near future. /s/ Gia Nicole Eubanks

(emphasis added).  In ***Reaves***, the letter sent to the Superintendent by Reaves's attorney provided:

> I have been retained by Rebecca Lou Rouse to represent her daughter, Ashley Renee
> Reaves, with regard to injuries and damages arising and growing out of a bicycle/motor
> vehicle accident which occurred on 2/18/96 at approximately 1:30 p.m. on the grounds of
> Davis School.  It would be greatly appreciated if you would have your insurance carrier
> contact me regarding adjustment of this claim. /s/ Preston Davis Rideout, Jr.

***Id***.

## II. Delivery

### A. Fairley

---

    [2]  This first sentence is part of the short and plain statement of the facts.  Of great significance to
this statement is the language pertaining to "the above referenced accident" which of course is plainly stated
in the regards section directly above the first sentence beginning with "Please be advised...." This
referenced section stated that the client is Fairley, the date of the accident was May 30, 1996, and the
nature of the accident was a "[s]ingle motor vehicle accident on River Road in George County, Mississippi
- gravel in the road."

¶21. In the case sub judice, Board president/chairman Christian testified at his deposition taken on November 10, 1997, that Eubanks's letter regarding Fairley's accident was handed to him, and he read the letter. Board member Orville H. Cochran (Cochran) also testified in his deposition taken on November 10, 1997, that Christian made him aware of Fairley's claims regarding her accident that occurred in May 1996. Cochran also stated that the normal procedure for handling the mail was for the purchasing agent to open all correspondence addressed to the Board and give it to the Board President unless specially addressed to one of the other Board members. He also then testified that the County had recently sanded the road at River Road around May 30, 1996.

¶22. The Board's comptroller, Ricky E. Churchwell (Churchwell), in his deposition stated that he was the initial point of contact with the Board's insurance company once he was made aware of Fairley's accident. At his deposition, Churchwell produced Eubanks's letter that he had received from the Board. Churchwell verified that he had sent a facsimile transmission to Jerald Delany at the Board's insurance company, Titan Indemnity Insurance Company, dated July 3, 1996, on the Board's letterhead informing them of Fairley's potential claim and Eubanks's representation. Churchwell testified that Board member Cochran informed him of Fairley's accident and that a claim probably needed to by filed. Churchwell also testified that he dealt with Kristie Henderson (Henderson).

¶23. In Henderson's deposition, she testified that in her capacity as an insurance adjuster for associated adjusters that she had conversations with Churchwell and Cochran as to Fairley's pending case. She also discussed the details of Eubanks's letter with Churchwell and Cochran.

¶24. In Eubanks's affidavit, she stated that she had numerous telephone conversations with the County's adjuster, Henderson. According to Eubanks's affidavit, Henderson took a taped statement from Fairley on August 19, 1996, concerning the accident on May 30, 1996.

9

¶25.    This Court only requires substantial compliance with the notice provisions of the MTCA having abolished the requirement of strict compliance.  This Court in *City of Pascagoula v. Tomlinson*, 741 So.2d 224, 225 (Miss. 1999), stated:

> In *Reaves v. Randall*, 729 So.2d 1237 (Miss. 1998), this Court adopted a "substantial compliance" scheme, holding that "(w)hen the simple requirements of the Act have been substantially complied with, jurisdiction will attach for the purposes of the Act."  In *Carr v. Town of Shubuta*, 733 So.2d 261 (Miss. 1999), this Court approvingly cited the Indiana case of *Collier v. Prater*, 544 N.E.2d 497, 498 (Ind. 1989) for the proposition that:
>
> > [N]otice is sufficient if it substantially complies with the content requirements of the statute.  What constitutes substantial compliance, while not a question of fact but one of law, is a fact-sensitive determination.  In general, a notice that is filed within the [requisite] period, informs the municipality of the claimant's intent to make a claim and contains sufficient information which reasonable affords the municipality an opportunity to promptly investigate the claim satisfies the purpose of the statute and will be held to substantially comply with it.

*Shubuta*, at 263.

### B.  *Reaves*

¶26.    Following the letter sent by Reaves's attorney, an adjuster conducted an interview of Reaves and Rouse.  Depositions of several witnesses were also taken.  729 So.2d at 1238.  Reaves admitted that the notice letter did not meet the strict construction of Miss. Code Ann. § 11-46-11.  However, Reaves contended that "the deficiencies in the notice were waived or cured by either the insurance adjuster's investigation and rejection of the claim or the participation of the appellees in discovery."  *Id*.

¶27.    In *Reaves* this Court, by finding that the letter substantially complied with the notice provision, rejected strict compliance as set forth in *City of Jackson v. Lumpkin*, 697 So.2d 1179 (Miss. 1997), and *Carpenter v. Dawson*, 701 So.2d 806 (Miss. 1997).  The Court concluded:

The Mississippi Tort Claims Act stands in contrast to the old common law principle of sovereign immunity where an injured party was barred from recovery against a political subdivision. The Act was adopted to reduce the harsh effect of the common law. We have held that statutes such as this should be read reasonably. *See Brown v. Flaherty*, 601 So.2d 860 (Miss. 1992). A letter of notice to the chief executive officer of the governmental entity is the only means the legislature prescribed through which sovereign immunity may be reached. However, the Act leaves the term "chief executive officer of the governmental entity" undefined. This language has proved overly broad and likely has created much hardship. In order to give reasonable meaning to the statute, we hold today that this term may be read to include any of the following: president of the board, chairman of the board, any board member, or such other person employed in an executive capacity by a board or commission who can be reasonably expected to notify the governmental entity of its potential liability. The purpose of the Act is to insure that governmental boards, commissions, and agencies are informed of claims against them. Such notice encourages entities to take corrective action as soon as possible when necessary; encourages pre-litigation settlement of claims; and encourages more responsibility by these agencies.

When the simple requirements of the Act have been substantially complied with, jurisdiction will attach for the purpose of the Act. **In this case, we find that Reaves substantially complied with the notice provisions of the Act. Her notice letter, sent to Superintendent Stevenson, lists the persons involved in the accident, when the accident occurred, where the accident occurred, and what vehicles were involved.** Superintendent Stevenson is employed in an executive capacity by the school board and through this letter the board was put on notice of the claim. The board had a duty to inquire into the details of the claim.

In order to carry out the legislative purpose of providing relief to injured citizens, we hold that substantial compliance with the notice provisions of the Act is sufficient.

*Reaves*, 729 So.2d at 1240 (emphasis added).

¶28.    Clearly, both Reaves and Fairley sent written notice as evidenced by their letters. In addition, both satisfied the delivery, via mail or hand delivery, requirement. In *Reaves*, the attorney sent the letter to the Superintendent while Fairley sent her letter to the Board. In *Reaves*, this Court held that "chief executive officer" may include the "president of the board, chairman of the board, any board member, or such other person employed in an executive capacity by a board or commission who can be reasonably expected to notify the governmental entity of its potential liability." *Reaves*, 729 So.2d at 1240.

### III. Other Factors

11

¶29. In addition to the written notice was in writing delivered to the Superintendent in *Reaves* and to the Board by Fairley, there are a number of other requirements that were met in both the case sub judice and in *Reaves*. Looking at the two letters together, it is clear that both contain a short and plain statement of the facts under which the claim is based. Breaking this down further, both cases stated **(1)** the circumstances which brought about the injury: *Reaves* stated there was "a bicycle/motor vehicle accident" and Fairley stated she received personal injury and property damages in the aforementioned accident (i.e., a single motor vehicle accident and that there was gravel in the road); **(2)** the extent of the injury: *Reaves* simply stated there were "injuries and damages arising and growing out of a bicycle/motor vehicle accident", and Fairley stated there were "personal injuries and/or property damages sustained in the above referenced accident" (i.e., a single motor vehicle accident); **(3)** the time and place of the injury: *Reaves* stated that the accident "occurred on 2/18/96 at approximately 1:30 p.m. on the grounds of Davis School" and Fairley stated that she received injuries and damages "in the above referenced accident on May 30, 1996" (i.e., the date of the accident "05/30/96" and the nature of the accident single motor vehicle accident "on River Road in George County, Mississippi"; **(4)** the names of all persons known to be involved: *Reaves* stated only that "Ashley Renee Reaves" sustained injuries and Fairley stated that Fairley received injuries and property damage only in the above referenced **single** motor vehicle accident; **(5)** the amount of money damages sought: *Reaves* provides no amount of money damages and simply stated there were "injuries and damages arising and growing out of a bicycle/motor vehicle accident", likewise Fairley stated there were "personal injuries and/or property damages"; **(6)** residence of the person making the claim at the time of the injury and at the time of filing the notice: neither *Reaves* nor Fairley provided their addresses

12

although both were represented by legal counsel whose addresses would be readily available. (emphasis added).

¶30.     After viewing the two cases side by side and keeping in mind that this Court ruled that *Reaves* did substantially comply with the notice provision of Miss. Code Ann. § 11-46-11, I fail to understand how the majority can rule that Fairley did not also substantially comply with the statute.  At most Fairley and *Reaves* may be distinguished by the fact that Fairley failed to state the *time* of the accident, but did she state the date of the accident.  However, in *Reaves* the only name referenced in a bicycle/motor vehicle accident, which presumably would involve at least two people,  the cyclist and the vehicle driver, was Ashley Renee Reaves, whereas, Fairley only referenced herself in the letter which presumably is correct since it was a single vehicle accident due to gravel on the road.  The point of citing these perhaps arguable distinctions, weak as they are,  is that even if Fairley failed to state the time, which I believe is less important given the fact that the date and place of the accident is supplied by Fairley, Reaves failed to supply as much information as Fairley in other areas yet this Court ruled that the *Reaves* letter substantially complied with the statute.

¶31.     Indeed this Court has ruled on the issue of substantial compliance in many cases.  *See Powell v. City of Pascagoula*, 752 So.2d 999 (Miss. 1999) (motorist's failure to include her address and service of notice on city clerk instead of the mayor or city manager substantially complied);  *Thornburg v. Magnolia Reg'l Health Ctr.*, 741 So.2d 220, 222-24 (Miss. 1999) (plaintiff substantially complied even though she failed to include her address in letter, but did include the address of the attorney handling the claim, and the opposing party "could have presumably obtained the information regarding Thornburg's residence by conducting a brief investigation"); *McNair v. Univ. of Miss. Med. Ctr.*, 742 So.2d 1078

13

(Miss. 1999) (notice letter sent via United States mail instead of certified or by hand delivered mail substantially complied).

¶32. In *Thornburg*, 741 So.2d at 222-24, this Court addressed two notice deficiencies that are also present in the case at bar. Magnolia argued that Thornburg's notice was defective because it failed to include Thornburg's residence either at the time of the injury or at the time of filing the notice as required by Miss. Code Ann. § 11-46-11(2). This Court held that:

> It is apparent, however, that the scheme of substantial compliance adopted by this Court in *Reaves* and *Carr* does not require that a plaintiff substantially comply with each informational notice requirement set forth in the Tort Claims Act. As noted earlier, this Court held in *Carr* that "(i)n general, a notice that is filed within the [requisite] period, informs the municipality of the claimant's intent to make a claim and contains sufficient information which reasonable affords the municipality an opportunity to promptly investigate the claim satisfies the purpose of the statute and will be held to substantially comply with it." *Carr*, at 263.
>
> This Court concludes that, notwithstanding Thornburg's failure to include her address in her letter, her notice letter nevertheless informed Magnolia of the substance of her claim and provided Magnolia with sufficient information to conduct a proper investigation. Thornburg's letter explained in depth the nature of the incident which allegedly gave rise to her injuries, and the letter clearly set forth the claimed damages resulting therefrom. Also, the letter provided the address of the attorney handling the claim, and Magnolia could have presumably obtained the information regarding Thornburg's residence by conducting a brief investigation. This argument is without merit.

741 So.2d at 222-23.

¶33. Here, as in *Thornburg* and *Reaves*, the letter sent contained the mailing address of Fairley's attorney. In fact, the insurance adjuster conducted numerous conversations with Fairley's attorney and took a taped interview with Fairley. Obviously, this deficiency did not prevent Fairley from being contacted to investigate the claim. Fairley's letter, like that of Reaves, informed the opposing party about the "substance" of her claim and gave "sufficient" information to conduct a proper investigation. *Thornburg*, 741 So.2d at 222-23.

14

¶34. Magnolia further alleged that the notice was deficient in that it was sent by first class mail rather than being delivered in person or by registered or certified United States mail as required by Miss. Code Ann. § 11-46-11(2). This Court held that:

> Magnolia's final argument is that Thornburg's notice was deficient in that it was sent by first class mail rather than by being "delivered in person or by registered or certified United States mail," as required by § 11-46-11(2). The present issue has not been addressed by a prior decision of this Court and it is clear that the present case involves a technical violation of § 11-46-11(2). We conclude however, that, a failure to comply with this provision should not, as a matter of law, serve as a bias for dismissing a lawsuit. We hold that, in cases in which notice is sent by first class mail, a governmental entity must demonstrate actual prejudice resulting from the failure to comply with the "registered or certified mail" requirement in order to be entitled to a dismissal on this basis.

*Thornburg*, 741 So.2d at 222-23.

¶35. Since board chairman Christian, board member Cochran, and board comptroller Churchwell, all acknowledged that they received Fairley's letter sent by her attorney and forwarded it to their insurance company, the Board has not established that it was prejudiced by the fact that the letter was sent by first class mail.

¶36. Based on the previously cited line of cases handed down by this Court which addressed substantial compliance and not losing sight of the fact that the statute is intended to put a party on notice of a claim, I disagree with the majority's holding that Fairley did not substantially comply with the notice of claim provisions of Miss. Code Ann. § 11-46-11.

### IV. Summary Judgment

¶37. Since I disagree with the majority's finding on the notice requirement, I will address why I concur with the trial court's decision to grant summary judgment which was proper on the grounds of sovereign immunity not on the notice requirement. Fairley contends that the trial court erred in ruling that the maintenance of roads is a discretionary function for which sovereign immunity had not been waived by the

county. Fairley argues that due to the loose gravel on the county road the Board had a duty to warn Fairley of the hazard on the road. Fairley cites *Jones v. Miss. Dep't of Transp.*, 744 So.2d 256 (Miss. 1999), in support of her position. In *Jones*, this Court reversed the Circuit Court of Tunica County holding that the placement of traffic control devices was a discretionary act but the County, as well as the Mississippi Department of Transportation, had a duty to warn of a dangerous condition created by the intersection if they had notice of the danger. *Id*. at 258. Jones was injured in an one-vehicle accident while traveling as a passenger on Bowden Lost Lake Road in Tunica County. There was no stop sign at the end of Bowden Lost Lake Road nor were there any traffic control signs warning oncoming traffic that they were approaching a "T" intersection. *Id*.

¶38.    Here, the trial court relied on *Coplin v. Francis*, 631 So.2d 752 (Miss. 1994) and *Webb v. City of Lincoln*, 536 So.2d 1356 (Miss. 1988), in determining that sovereign immunity had not been waived under the MTCA. In *Coplin*, this Court held that:

> Boards of supervisors are vested with full jurisdiction over the roads, bridges and ferries in their respective counties. Miss. Code Ann. § 19-3-41 (1972). We long have maintained that a county has no liability except as authorized by statute. *Leflore County v. Big Sand Drainage District*, 383 So.2d 501 (Miss. 1980). In *Webb v. County of Lincoln*, 536 So.2d 1356, 1359 (Miss. 1988) and *State for the Use and Benefit of Brazeale v. Lewis*, 498 So.2d 321, 323 (Miss. 1986), we recognized that Miss. Code Ann. § 19-13-51 partially abrogates the immunity of boards of supervisors in their capacity as "overseers" of a county's roads and bridges. However, in *Lewis*, we noted that the statute
> > does in fact, reinforce the discretionary-ministerial distinction by allowing the board as a whole the authority to make discretionary decisions with regard to the general condition and state of maintenance of county roads and bridges, thus leaving intact the board's qualified immunity for such decisions.
> *Id*. at 323. In finding that road maintenance and repair are discretionary rather than ministerial functions, we stated in *Lewis*:
> > Assuming arguendo that an individual member of the board of supervisors has a ministerial duty or function to maintain the roads of his district, we

16

recognize that, for various reasons, at least some roads may be in a state of disrepair from time to time, particularly due to lack of funds, which would of course, require that the main, heavily-traveled roads receive the supervisor's immediate attention. Certainly, making the determination as to which roads should be the better maintained under such conditions would be a discretionary matter with the individual member of the board, absent some personal tort committed by him.

*Id*. at 323.

In Lewis the plaintiff alleged that her injuries were caused by "numerous holes, indentations, and rough spots along the road which culminated in creating a hazardous condition." *Id*. at 321-322, and in *Webb* we relied on *Lewis* to find that the repair of a fallen stop sign, which the plaintiffs alleged caused the one-car accident in which they were injured, was also a discretionary function.

*Coplin*, 631 So.2d at 754-55 (citing *Webb*, 536 So.2d at 1359).

¶39.    Recently this Court addressed whether the MDOT had immunity under the MTCA pursuant to

Miss. Code Ann. § 11-46-9. *See Miss. Dep't of Transp. v. Cargile*, 847 So.2d 258 (Miss. 2003).

In *Cargile* the Court stated that:

MDOT claims to have exercised reasonable care in maintaining the portion of Highway 528 where the accident took place. MDOT offered the testimony of Thornton who stated that he inspected the road weekly. Thornton testified that the week before the accident his inspection revealed only minor defects which he did not consider dangerous or in need of immediate repair. Finally, MDOT maintains that there was no objection to the evidence that there was a subsequent overlay of this highway because such overlay was not a remedial measure with respect to this accident.

Cargile insists that the trial court was correct in ruling that MDOT was not entitled to immunity under Miss.Code Ann. § 11-46-9. He argues that the act was not discretionary and alternatively that immunity was lost when MDOT received notice of the dangerous condition. Cargile cites Miss.Code Ann. § 65-1-65 (Rev.2001) as providing the ministerial duty of the maintenance of state highways:

It shall be the duty of the State Highway Commission to have the State Highway Department maintain all highways which have been or which may be hereafter taken over by the State Highway Department for maintenance in such a way as to afford convenient, comfortable, and economic use thereof by the public at all times. To this end it shall be the duty of the director, subject to the rules, regulations and orders of the commission as spread on its minutes, to organize an adequate and continuous patrol for the maintenance, repair, and inspection of all of the state-maintained state

17

highway system, so that said highways may be kept under proper maintenance and repair at all times.

*Id*.

The Mississippi Tort Claims Act provides the exclusive remedy for a party injured by a governmental entity's tortious acts or omissions. *City of Tupelo v. Martin*, 747 So.2d 822, 826 (Miss.1999). The relevant statute, Miss.Code Ann. § 11-46-7(1)(b), states that "a governmental entity and its employees acting within the course and scope of their employment or duties shall not be liable for any claim arising our of any act of omission of an employee of a governmental entity exercising ordinary care in reliance upon, or in the execution" *Id*. Alternatively, Miss.Code Ann. § 11-46-9(1)(q) provides that "a governmental entity and its employees acting within the course and scope of their employment or duties shall not be liable for any claim arising out of an injury solely by the effect of weather conditions and the use of streets and highways." *Id*.

As before, *Jones v. Mississippi Department of Transportation*, 744 So.2d 256, 263 (Miss.1999), aids in our present explanation. The Tort Claims Act does not define "discretion." *Id*. at 259. Prior to abolishment of judicially created sovereign immunity in *Pruett v. City of Rosedale*, 421 So.2d 1046 (Miss.1982), this Court used two tests to determine immunity. The governmental/proprietary function test was used to determine whether a municipality was entitled to immunity. *Jones*, 744 So.2d at 259. In *Parker v. City of Philadelphia*, 725 So.2d 782, 784 (Miss.1998), we explained that:

> Under pre *Pruett* common law, whether a city "enjoys the defense of sovereign immunity depends on whether the alleged conduct occurred in the exercise of a governmental function or in the exercise of a proprietary function.' *Morgan v. City of Ruleville*, 627 So.2d 275, 279 (Miss.1993); *Webb v. Jackson*, 583 So.2d 946, 952 (Miss.1991) A city performing a governmental function is immune from a negligence suit, whereas a city performing a proprietary function is not immune from a negligence suit. *Morgan*, 627 So.2d at 279; *Webb*, 583 So.2d at 952.

*Parker*, 725 So.2d at 784 (quoting *Hord v. City of Yazoo City*, 702 So.2d 121, 123 (Miss.1997).

However, this test is not applicable to the state and its political subdivisions. *Jones*, 744 So.2d at 259. *See also Stokes v. Kemper County Bd. of Supervisors*, 691 So.2d 391, 393 (Miss.1997); *Miss. Transp. Comm'n v. Rector*, 663 So.2d 601, 602 (Miss.1995).

At common law, this Court utilized the discretionary/ministerial test to determine the immunity status of a governmental employee. *Jones*, 744 So.2d at 259. Governmental employees are entitled to qualified immunity for discretionary acts. *Id*. Under *Mohundro v. Alcorn County*, 675 So.2d 848, 853 (Miss.1996), a duty is ministerial and not discretionary if it is imposed by law and its performance is not dependent on the employee's judgment. *Jones*, 744 So.2d at 259-60 (citing *Mohundro*, 675 So.2d at 853; *L.W. v. McComb Separate Mun. Sch. Dist*., 754 So.2d 1136 (Miss.1999). *See also Barrett v. Miller*, 599 So.2d 559, 567 (Miss.1992). The classic definition

is found in ***Poyner v. Gilmore***, 171 Miss. 859, 158 So. 922 (1935), where this Court stated:

> [t]he most important criterion, is that [if] the duty is one which has been positively imposed by law and its performance required at a time and in a manner or upon conditions which are specifically designated, the duty to perform under the conditions specified not being dependent upon the officer's judgment or discretion, the act and discharge thereof is ministerial.

*See **Coplin v. Francis***, 631 So.2d 752, 754 (Miss.1994) (quoting ***Poyner***, 171 Miss. at 865, 158 So. at 923). *See also **Barrett v. Miller***, 599 So.2d at 567; ***McFadden v. State***, 542 So.2d 871, 877 (Miss.1989); ***Region VII, Mental Health-Mental Retardation Ctr. v. Isaac***, 523 So.2d 1013 (Miss.1988).

In ***Pruett v. City of Rosedale***, 421 So.2d 1046 (Miss.1982), we said that the Legislature has "specifically limited the liability of governmental officials to ministerial functions alone, allowing those state employees to continue their basic policymaking decisions without fear of legal retribution." ***Id***. *See also **Givens***, 754 So.2d at 1223.

We have further clarified the distinction as by defining it as directly correlated to the grant of immunity from negligent acts or omissions. ***State ex rel. Brazeale v. Lewis***, 498 So.2d 321, 322 (Miss.1986). The basis for the immunity given to government officials is in the inherent need to promote efficient and timely decision-making without fear of liability. ***Id***. This distinction is an integral part of the justice system and works to encourage free participation and hinder fear that goes with risk-taking situations and the exercise of sound judgment. ***Id***.

In ***Brazeale***, the plaintiff sued a member of the board of supervisors alleging negligent repair and maintenance of a county road for injuries and damages which she alleged were proximately caused by the condition of the road. ***Id***. She alleged there were numerous holes, indentations and rough spots along the road creating a hazardous condition that caused her accident. ***Id.*** at 322. Relevant in the case sub judice, the Court stated that:

> [i]f an individual had a ministerial duty or function to maintain the roads of his district, we recognize that, for various reasons, at least some of the roads may be in a state of disrepair from time to time, particularly because of the lack of funds, which would, of course, require that the main heavily traveled roads receive the supervisor's immediate attention ... Certainly making the determination as to which roads should be the better maintained under such conditions would be a discretionary matter with the individual, absent some personal tort committed by him

 ***Id.*** at 323.

At common law, prior to the enactment of § 11-46-1(w), upon receipt of notice, a governmental entity had a duty to warn of a dangerous condition. ***Jones***, 744 So.2d at 260 (citing ***Coplin***, 631 So.2d at 755). We have held that even where actions are deemed to be discretionary, rather than ministerial, the question may remain whether the public was afforded adequate warnings of the dangerous condition. ***Id***. at 260. Miss Code

19

Ann. § 11- 46-9 requires the actor to exercise a minimum standard of ordinary care to maintain the statutory shield. *Id*. As in *Jones*, MDOT has a duty to warn of dangerous conditions if given notice, either actual or constructive, of a dangerous condition. 744 So.2d at 260. MDOT's duty becomes one of ordinary care in warning and/or providing relief from the dangerous condition to those who use the roads. *Id.* As previously stated, immunity for discretionary duties is granted only when ordinary care is used. *See Brewer v. Burdette*, 768 So.2d 920, 923 (Miss.2000); *L.W.*, 754 So.2d at 1142. The government actor's use of ordinary care is a question for the finder of fact. *Brewer*, 768 So.2d at 923; *L.W.*, 754 So.2d at 1142.

In *Brewer* we held that road maintenance and repair are discretionary acts. *Id*. (citing *Mohundro*, 675 So.2d at 854). Using all of the relevant facts, the trial court is charged with deciding whether the decision maker used ordinary care. *Id*. at 923 (citing *L.W.*, 754 So.2d at 1141).

In *Mohundro*, Dixon, an Alcorn County supervisor, failed to use the requisite ordinary care when performing his job of inspecting and maintaining the county roads. 675 So.2d at 848. The supervisor personally observed a large washout in the middle of the county road on Sunday. *Id.* at 850. He ordered another county employee to place yellow warning signs on the road to the north and south of the washout. *Id*. The signs were not lit. *Id*. Furthermore, they were scarcely anchored in place. *Id*. Although Dixon was worried that someone might drive into the washout and made several trips to the scene, he took no other action. *Id*. He intended to fix it on Monday. *Id*.

Mohundro drove his truck into the washout early Monday morning. *Id*. The darkness and rain prevented him from seeing the pit. *Id*. Mohundro suffered catastrophic injuries which rendered him a quadriplegic. *Id*.

Even though he was aware of the dangerous condition, by the time Mohundro drove into the pit Monday morning Dixon had still made no effort to warn the public. *Id*. at 854. We held that Dixon acted with such gross negligence and/or callous indifference to the safety of the public as a whole his conduct was held to be constructively intentional. *Id*. Dixon was not entitled to immunity. *Id*. at 854 (citing *McFadden v. State*, 542 So.2d 871 (Miss.1989)).

Here, the trial court correctly found MDOT's duty to regularly inspect and maintain Highway 528 to be discretionary. As previously stated, even where actions are deemed to be discretionary, rather than ministerial, the question in this case was whether the public was afforded adequate warnings of the dangerous condition. Miss.Code Ann. § 11-46-9 requires MDOT to exercise a minimum standard of ordinary care to maintain the statutory shield. As in *Jones*, MDOT has a duty to warn of dangerous conditions if given notice, either actual or constructive, of a dangerous condition. MDOT's duty became one of ordinary care in warning and/or providing relief from the dangerous condition to those who use the roads. Immunity for discretionary duties is granted only when ordinary care is used. *See Brewer v. Burdette*, 768 So.2d at 920; *L.W.*, 754 So.2d at 1142.

*Cargile*, 847 So.2d at 266-69.

20

¶40. Based on the record, Fairley presented no evidence that the Board should have known that a dangerous condition existed. Therefore, I would affirm the trial court's ruling that the maintenance of the roads is a discretionary function for which the County's sovereign immunity had not been waived.

## V. Conclusion

¶41. For the above and foregoing reasons, I conclude that the trial court erred in finding that Fairley did not substantially comply with the notice provisions of Miss. Code Ann. § 11-46-11. However, I believe that the trial court correctly ruled that sovereign immunity had not been waived for the discretionary act of maintaining the roads.

¶42. For the foregoing reasons, I do not concur with the majority opinion as to summary judgment based on the notice requirement. However, I concur that summary judgment was proper as to sovereign immunity.

**GRAVES, J., JOINS THIS OPINION.**