WALLER, Chief Justice,
concurring in part and in result:
¶ 41. I fully concur with the majority’s holding that Horn Lake is not entitled to immunity under Section 11 — 46—9(l)(c) in this case. I also agree with the majority’s ultimate conclusion that this case must be reversed and remanded to the trial court for further proceedings. However, I do not agree with the majority’s position that, on remand, the trial court must make a threshold determination of the applicability of Section 11 — 46—9(l)(d), the discretionary-function exception, as I believe that provision does not apply in this case. I write separately to state what I believe to be the proper analysis for determining the applicability of the discretionary-function exception.
¶ 42. The MTCA’s discretionary-function exception is patterned on federal law. The Federal Tort Claims Act (FTCA) was enacted roughly forty years prior to the enactment of the MTCA. The FTCA waived the federal government’s sovereign immunity against claims “arising or resulting from the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment[.]” See 28 U.S.C. § 2679(b)(1) (1988). Like the MTCA, the FTCA contains numerous exceptions to this waiver of immunity. See 28 U.S.C. § 2680 (2006). Among these exceptions is the so-called discretionary-function exception, which provides governmental entities and their employees acting in the scope of their employment with immunity from claims “based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on *1119 the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.” 28 U.S.C. § 2680(a) (2006).
¶43. In the 1980s, the United States Supreme Court formulated a two-part “public-policy function test” for determining the application of discretionary-function immunity. See United States v. Gaubert, 499 U.S. 315, 322-23, 111 S.Ct. 1267, 113 L.Ed.2d 335 (1991). This test is a manifestation of the legislative intent behind the discretionary-function exception, which is to “prevent ‘second-guessing’ of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort.” United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines), 467 U.S. 797, 813-14, 104 S.Ct. 2755, 81 L.Ed.2d 660 (1984) (emphasis added). The United States Supreme Court and the federal circuit and district courts continue to utilize this test to this day.
¶ 44. In 1993, the Mississippi Legislature abrogated the state’s prior common-law and statutory sovereign immunity through the enactment of the MTCA. See Miss.Code Ann. § 11^6-5(1) (Rev. 2012). The provisions of the MTCA parallel those of the FTCA, allowing claims “arising out of the torts of such governmental entities and the torts of their employees while acting within the course and scope of their employment.” See id. Of particular importance to this case, the Legislature also enacted a discretionary-function exception that is identical to the one found in the FTCA. Compare Miss.Code Ann. § 11-46 — 9(l)(d) (Rev. 2012) with 28 U.S.C. § 2680(a). The MTCA’s discretionary-function provision provides immunity against claims “[b]ased upon the exercise or performance or failure to exercise or perform a discretionary function or duty on the part of a governmental entity or employee thereof, whether or not the discretion be abused.” Miss.Code Ann. § 11-46 — 9(l)(d) (Rev. 2012).
¶ 45. In 1999, this Court adopted the United States Supreme Court’s public-policy function test as a means of analyzing the MTCA’s discretionary-function exception, recognizing that the MTCA exception was patterned on the identical FTCA exception. See Jones v. Miss. Dep’t of Transp., 744 So.2d 256, 260 (Miss.1999) (citing Gaubert, 499 U.S. at 322, 111 S.Ct. 1267), abrogated on other grounds by Strange ex rel. Strange v. Itawamba Cnty. Sch. Dist., 9 So.3d 1187, 1192 (Miss.Ct.App.2009). Since then, this Court has applied the public-policy function test to determine whether the discretionary-function exception applies to a given case by looking to the governmental conduct that gave rise to the plaintiffs claim. See, e.g., Miss. Dep’t of Mental Health and Ellisville State Sch. v. Shaw, 45 So.3d 656, 659 (Miss.2010) (“Simply put, discretionary acts which enjoy immunity are those acts which promote some social, economic, or political policy.”) (emphasis added). Based on the almost identical language of the MTCA and FTCA, I believe there is a practical and rational basis for the Mississippi Supreme Court to interpret the MTCA’s discretionary-function exception as the United States Supreme Court has done for its identically worded federal counterpart. Consistency and clarity should be the watchwords in analyzing this heavily litigated area of law.
¶ 46. Recently, though, this Court created a distinction between governmental “acts,” and “functions,” holding that “[i]t is the function of a governmental entity — not the acts performed in order to achieve that function — to which immunity does or does not ascribe under the MTCA.” See Little v. Miss. Dep’t of Transp., 129 So.3d 132, 138 (Miss.2013). The majority asserts that *1120 this Court’s holdings in Pratt v. Gulfport-Biloxi Regional Airport Authority, 97 So.3d 68 (Miss.2012), and City of Jackson v. Doe ex rel. J.J., 68 So.3d 1285 (Miss.2011), also support the proposition that this Court must look solely to the broad governmental function, rather than the conduct giving rise to the plaintiffs claim, in determining whether discretionary-function immunity applies. But each of these cases is distinguishable. The plurality in Pratt actually applied the public-policy function test to the specific governmental conduct in question — an employee’s placement of nonslip tape on a staircase — and found it to be discretionary. Pratt, 97 So.3d at 74-75. And Doe is completely inapposite and inapplicable to the instant case. In Doe, the governmental function and the conduct giving rise to the plaintiff’s claim were one and the same — the City of Jackson’s decision to operate a public park. Doe, 68 So.3d at 1289. There was no narrower governmental conduct to which the public-policy function test could be applied, because the plaintiffs injuries were caused by a private third party. The Doe majority correctly held that the City of Jackson’s decision to create and operate a public park met both prongs of the public-policy function test because that decision was not mandated by any law and was guided only by the policy of promoting “the public interests and welfare.” Id. at 1288. Horn Lake’s decision to provide ambulance services to its residents can be likened to the City of Jackson’s decision to create a public park, but such a decision is not at issue in the instant case.
¶ 47. Section 11 — 46—9(l)(d) clearly requires this Court to look at the specific activity in question, because it is the performance of a discretionary function that is guaranteed immunity. See Miss.Code Ann. ll-46-9(l)(d) (Rev. 2012). I would hold that our analysis of discretionary-function immunity must focus on the conduct giving rise to the plaintiffs claims — in this case, the alleged negligent operation of a stretcher. The contrary assertion, that we must look at the “function” or “duty” of the operation of a stretcher, is a distinction of semantics rather than substance. Thus, I believe the proper course is for the Mississippi Supreme Court to apply the public-policy function test in the manner prescribed by the United States Supreme Court.
¶ 48. As to the first prong of the public-policy function test, “it is the nature of the conduct, rather than the status of the actor,” that governs the application of the exception. Varig Airlines, 467 U.S. at 813, 104 S.Ct. 2755. “[I]f the employee’s conduct cannot appropriately be the product of judgment or choice, then there is no discretion in the conduct for the discretionary function exception to protect.” Berkovitz, 486 U.S. at 536, 108 S.Ct. 1954. For example, the first prong is not satisfied if a “statute, regulation, or policy specifically prescribes a course of action for an employee to follow,” because “the employee has no rightful option but to adhere to the directive.” Id. at 536, 108 S.Ct. 1954. See Little v. Miss. Dep’t of Transp., 129 So.3d 132, 138 (Miss.2013) (“Because Section 65-1-65 requires the Department to maintain and repair the state highways, that duty— and all acts in furtherance of that duty— are ministerial unless ... another statute makes a particular act discretionary.”).
¶ 49. In this case, with respect to the first prong of the public-policy function test, Brantley has not presented any evidence that his injury was the result of a violation of some mandatory course of action by the EMT. On this issue, it is instructive to look to the statutes and regulations governing the provision of emergency services to determine if the Legislature has prescribed a specific course of *1121 action in this type of case. See Berkovitz, 486 U.S. at 537, 108 S.Ct. 1954. See also Gaubert, 499 U.S. at 324, 111 S.Ct. 1267 (“If the employee violates [a] mandatory regulation, there will be no shelter from liability because there is no room for choice and the action will be contrary to policy.”) However, the nonexistence of a mandatory statute or regulation does not automatically equate to immunity in every case, because this Court still must analyze the conduct in question under the second prong of the public-policy function test. See Shaw, 45 So.3d .at 659 (“Governmental acts can be discretionary, ministerial, or neither.... Just because a governmental act was not ministerial does not mean it was discretionary.”).
¶ 50. If the conduct in question meets the first prong of the test, the court must then determine “whether that judgment is of the kind that the discretionary function exception was designed to shield.” Gaubert, 499 U.S. at 323, 111 S.Ct. 1267 (citing Berkovitz, 486 U.S. at 537, 108 S.Ct. 1954). The purpose of the discretionary-function exemption is to “prevent ‘second-guessing’ of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort.” Varig Airlines, 467 U.S. at 813-14, 104 S.Ct. 2755. For example, the United States Supreme Court has applied the FTCA’s discretionary-function exception to the Federal Aviation Administration’s procedures for inspecting and certifying aircraft, because those actions represent a policy determination as to how best to “accommodatfe] the goal of air transportation safety and the reality of finite agency resources.” Id. at 820, 104 S.Ct. 2755. The Court in Varig Airlines held that, in implementing the agency’s inspection and certification procedures, FAA employees had the discretion to “make policy judgments regarding the degree of confidence that might reasonably be placed in a given manufacturer, the need to maximize compliance with FAA regulations, and the efficient allocation of agency resources.” Id. On the other hand, “[t]here are obviously discretionary acts performed by a Government agent that are within the scope of his employment but not within the discretionary function exception because these acts cannot be said to be based on the purposes that the regulatory regime seeks to accomplish.” Gaubert, 499 U.S. at 325 n. 7, 111 S.Ct. 1267. As an example of a discretionary act that would not be afforded discretionary-function immunity, the Court provided the hypothetical situation where a government employee negligently crashed into another vehicle while driving on a mission connected with her work duties. Id. “Although driving requires the constant exercise of discretion, the official’s decisions in exercising that discretion can hardly be said to be grounded in regulatory policy.” Id.
¶ 51. The primary focus of the second prong of the test is on “the nature of the actions taken and on whether they are susceptible to policy analysis.” Gaubert, 499 U.S. at 325, 111 S.Ct. 1267. In this regard, the instant case is analogous to Fang v. United States, 140 F.3d 1238, 1241-42 (9th Cir.1998), where the Ninth Circuit Court of Appeals held that the discretionary-function exception of the FTCA did not apply to a claim based on the negligent provision of medical treatment by employees of the National Park Service. In Fang, the decedent was traveling through a national park when her car ran off the road and plummeted more than 200 feet down the side of a mountain. Id. at 1240. Two National Park Service emergency personnel arrived at the scene shortly thereafter and provided medical assistance to the decedent. Id. Unfortunately, the decedent died as a result of her injuries. Id. The decedent’s wrongful- *1122 death beneficiaries filed suit against the United States, claiming the EMTs had negligently failed to stabilize the decedent’s broken spine and to render proper CPR. Id. In response, the government moved for summary judgment, arguing that it was immune from suit under the discretionary-function exception of the FTCA. Id. The district court granted the government’s motion for summary judgment, and the plaintiff appealed to the Ninth Circuit Court of Appeals. Id.
¶ 52. On appeal, the Ninth Circuit reversed the district court’s grant of summary judgment to the government, holding that a “mere medical error or mistake” is not the type of policy-driven decision the discretionary-function exception was designed to protect. Id. at 1241. The Ninth Circuit found that the discretionary-function exception would provide immunity for the National Park Service employees’ regulatory decisions regarding the type of equipment to be kept at various sites throughout the park or the required level of training of the park’s emergency personnel, because those decisions require the use of policy-based judgment in determining how to best allocate limited government resources. Id. at 1241. On the other hand, the court reasoned,
[Ojnce the designated EMTs arrive at an accident scene and begin using the equipment and administering medical care, the policy shield of the discretionary function exception disappears. Whether an EMT properly applies a splint, administers CPR, or transports a patient has nothing to do with the allocation of policy considerations discussed above.
Id. at 1242. Applying the public-policy function test to the plaintiffs claims, the Ninth Circuit found that the EMTs’ decisions concerning the stabilization of the decedent’s spine and their methods of performing CPR mvolved personal choice and judgment, as no statute, regulation, or National Park Service policy demanded a specific course of action. Id. at 1243. However, the EMTs’ actions failed the second prong of the test, because no social, economic, or political policy is implicated by the decision of whether and how to stabilize a person’s spine or perform CPR. Id. Notably, the Ninth Circuit affirmed the district court’s holding that the discretionary-function exception barred the plaintiffs claim that the National Parks Service was negligent in failing to provide additional medical equipment, such as cervical collars and backboards, at all emergency stations within the park. Id. The National Park Service’s internal regulations did not require this particular equipment to be kept at the emergency station where the EMTs in question were located, and the court held that the plaintiff could not challenge this policy-based decision regarding how to allocate emergency equipment throughout the park. Id.
¶ 53. In this case, under the second prong of the public-policy function test, the decision by Horn Lake to operate an ambulance service for the benefit of its citizens undoubtedly involved the consideration of social and economic policy. However, this is not the conduct that gave rise to Brantley’s suit. Applying this Court’s precedent and the Ninth Circuit’s analogous reasoning in Fang to the instant case, it is clear that the conduct in question — an EMT’s alleged negligent handling of Brantley’s stretcher — implicates no arguable economic, social, or political policies. Brantley’s claim does not ask this Court to “second-guess” the policy-based decisions of Horn Lake’s governmental authorities. On the contrary, Brantley’s claim is based upon “an ordinary judgment made by EMTs in applying their training and expertise to an emergency situation,” which the discretionary-function *1123 exception was not meant to shield from liability. Fang, 140 F.3d at 1243. Accordingly, I would hold that the discretionary-immunity exception of the MTCA does not apply in this case. I would find that the trial court erred in granting Horn Lake’s motion for summary judgment and would remand this case for further proceedings.
RANDOLPH, P.J., CHANDLER AND PIERCE, JJ., JOIN THIS OPINION.